UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| KING RANCH, INC., *et al.,* | § | |
| | § | |
| *Plaintiffs*, | § | |
| | § | |
| v. | § | CIVIL ACTION H-12-797 |
| | § | |
| D.R. HORTON, INC., | § | |
| | § | |
| *Defendant*. | § | |

**AMENDED ORDER DENYING PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF**

Pending before this court is plaintiffs' motion for preliminary injunction.  Dkt. 4.  An oral hearing was held on Monday, April 9, 2012.  The parties agreed that the court should proceed to rule on plaintiffs' requests for both preliminary and permanent injunctive relief.  After a review of the motion, the response, the evidence presented at the hearing, and the applicable law, the court finds that the motion for preliminary injunctive relief should be DENIED, and that plaintiffs' request for permanent injunctive relief should be DENIED.  It is further ORDERED that plaintiffs' "emergency" motion for a trial setting (Dkt. 14), which is premised upon plaintiffs' asserted entitlement to injunctive relief, is DENIED AS MOOT.  It is further ORDERED that defendant's motion to dismiss (Dkt. 8) is DENIED AS MOOT in light of the amended complaint (Dkt. 13).  It is further ORDERED that the motion to transfer (Dkt. 12) is DENIED.

**I. BACKGROUND**

This is an action for trademark infringement and related claims filed by King Ranch, Inc. and King Ranch IP, LLC (referred to collectively hereafter as "King Ranch Texas" or "plaintiffs").  The sole defendant named in the initial complaint is D.R. Horton, Inc. ("D.R. Horton" or "defendant"), a homebuilder with its offices and principal place of business in Texas.  Dkt. 1.  Plaintiffs, after the

hearing on the motion for injunctive relief, added as a defendant Melody Homes, Inc., d/b/a D.R. Horton America's Homebuilder ("Melody Homes").  Dkt. 13.  Melody Homes is a wholly-owned affiliate of D.R. Horton.  *Id.*

Plaintiffs own and operate the 825,000 acre King Ranch located in Texas, and also own and operate related businesses that license and sell various items incorporating the King Ranch trademark (the trademark consists of the words "King Ranch," or the "running W" brand,[1] or both) pursuant to numerous federally-registered trademarks.  Dkt. 1.  The mark and brand have been used continually by King Ranch Texas since 1853.  Plaintiffs allege that D.R. Horton has infringed on these trademarks and otherwise violated unfair competition laws[2] beginning in 2008 by developing "a residential subdivision known as 'King Ranch Estates' (the "Subdivision") in Thornton, Colorado. According to Defendant, the Subdivision sits on property that was once owned by members of a local King family who had used the property as a ranch in the 1920s. [Plaintiffs] first learned of Defendant's development of the Subdivision in 2008, at which time [Plaintiffs] objected to any use of the designation King Ranch by Defendant in violation of King Ranch's trademark and related rights."  Dkt. 1 ¶ 20.

Plaintiffs' objections took the form of a letter sent to D.R. Horton.  D.R. Horton responded to plaintiffs' assertion of its rights in a letter dated May 23, 2008, and explained that it had no

---

[1]        The brand is an image of a length of rope fashioned in the shape of the letter "W."

[2]        The complaint alleges violations of the Lanham Act, 15 U.S.C. §§ 1114(1), 1125(a), (c), common law trademark infringement, common law unfair competition, trademark dilution under Texas law, and misappropriation under Texas law.  Dkt. 1.  The amended complaint adds claims for negligent misrepresentation and fraud that, not having been pleaded at the time of the injunction hearing, are irrelevant to the court's present ruling.  Dkt. 13.

involvement in naming the development, and that the housing development sits on land that had been known locally in Colorado as "the King Ranch" since the 1920s. Dkt. 4-2. The land was annexed by the City of Thornton, Colorado in 2004 and was called "King Ranch Estates" at the request of the former owners of the land, who were descendants of the King family who established the ranch in the 1920s. *Id.* D.R. Horton denied any use of "King Ranch Estates" as a mark, and stated that it used that phrase, or the shortened form, "King Ranch," to "inform customers or others of the geographic location of the relevant houses" that D.R. Horton was building and offering for sale. *Id.* After receipt of the letter, plaintiffs took no further action until sending another letter of complaint to D.R. Horton in early 2012. D.R. Horton responded in February 2012 in a manner consistent with its 2008 letter, and plaintiffs filed this lawsuit seeking preliminary and permanent injunctive relief and damages. Dkt. 1. Between 2008 and 2012, Melody Homes continued to market and sell homes in King Ranch Estates, Colorado, and to use the designation "King Ranch" as a shortened version of "King Ranch Estates."

Plaintiffs filed a motion for preliminary injunction seeking to prevent defendant from: (1) using the term "King Ranch Estates" as anything other than a designation of geographical origin; (2) to refrain from using "King Ranch" apart from the term "Estates" when designating geographical origin; (3) to refrain from using "King Ranch" in any fanciful or decorative manner in its advertisements or website; (4) to specifically refrain from using a logo used by D.R. Horton on one of its web pages depicting a sign saying "King Ranch" with a rope image below the words in the shape of a square knot; and (5) to cease use and production of any business cards, marketing or advertising that contain the words "King Ranch" (presumably without including the term "Estates"). Dkt. 4-4.

D.R. Horton responded, noting that its wholly-owned affiliate, Melody Homes, owns the land in Colorado and is the proper defendant in this case and a necessary party. Dkt. 9. Also necessary parties in defendant's view are the "King Ranch Homeowners Association," the individual homeowners who are members, and the City of Thornton, Colorado. *Id.* As noted above, plaintiffs have now sued Melody Homes. Dkt. 13. The issue of whether there are other necessary parties is not presently before the court.

Defendant also argued, *inter alia*, that all of the claims for preliminary injunctive relief raised in the initial complaint fail due to the "fair use" doctrine codified at 15 U.S.C. § 1115(b)(4). Dkt. 9 at 10. The defense of "fair use" permits a registered mark like "King Ranch" to be used by another, junior user (i.e., a party whose use post-dates the registrant's use) if the use is "otherwise than as a mark" and where the "term or device . . . is descriptive of and used fairly and in good faith only to describe the goods or services of such party, *or their geographic origin*[.]" 15 U.S.C. § 1115(b)(4)(emphasis supplied). In defendant's view, the source of the term "King Ranch" for the Melody Homes development has nothing to do with King Ranch Texas or its mark. Rather, it is the "fair use" of a place name that has been associated with the King Ranch in Colorado since the 1920s—an association arising from the long ownership of the land, as a ranch, by the King family, and further associated with the land because a local city annexed the property and named it "King Ranch Estates." Dkt. 9.

Plaintiffs respond that the use of the words "King Ranch" without including the word "Estates" constitutes use of the words as a mark by D.R. Horton, and particularly in the case of signs and advertisements for the homes. As noted above, the defense of fair use applies only when the use is "otherwise than as a mark." D.R. Horton argues that the presence of a sign at the entrance to the housing development saying "King Ranch" with a circle containing the letters "K" and "R" does not

4

constitute use of the phrase as a "mark." Likewise, defendant argues that other uses of the words "King Ranch" in its online advertisements, even the depiction of a sign saying "King Ranch" and including an image of a rope tied in a square knot under the words, is also not a "mark" because it does not indicate the source of a product, but only its geographic location. Dkt. 9.

A hearing was held on April 9, 2012, where the parties agreed that the hearing would address both preliminary and permanent injunctive relief. Thus, the court will address all claims for injunctive relief in this case.[3] The parties introduced several exhibits, including the deposition testimony of King Ranch, Inc.'s chief financial officer, William J. Gardiner. Dkt. 9-4. The exhibits and testimony make clear that the underlying facts as outlined above are largely undisputed. Further, there is no dispute concerning the registration or validity of plaintiffs' marks.

The parties do dispute whether plaintiffs have established a likelihood of confusion sufficient to either establish a likelihood of success on the merits, or to warrant permanent injunctive relief. Defendant also asserts that, irrespective of whether some likelihood of confusion exists, it is nonetheless entitled to assert the "fair use" defense and that plaintiffs' claims cannot withstand that affirmative defense. Assuming for purposes of the motion for injunctive relief that plaintiffs can otherwise establish infringement, dilution, and unfair competition, the dispute in this case becomes whether defendant can assert and prevail on its fair use defense. In this respect, the parties dispute whether defendant has used "King Ranch" as a mark because, if it has, the defense of fair use is unavailable and the court must proceed to analyze the merits of plaintiffs' claims for injunctive relief. At that point, the parties dispute is again not largely a factual one, but instead focuses on the

---

[3]    The court does not read the first amended complaint to assert any new claims for injunctive relief that were not raised in the initial complaint.

likelihood of confusion between plaintiffs' trademarked merchandise of various sorts and defendant's offering of homes for sale in a single community in Colorado.

If, however, the defense of fair use *is* available, the court must determine if it has been established.  If it is both available and has been established, then plaintiffs' claims for injunctive relief necessarily fail.  For the reasons set forth below, the court finds that defendant has not used "King Ranch" as a mark identifying the source of a product, but has instead used it solely as a means to inform customers of the geographic location of the houses it builds and sells.  Thus, the defense of fair use is both available to defendant, and has been established in this case.  The court, accordingly, does not reach the remaining issues presented by the parties.

## II.  Legal Standards

*1. Injunctive Relief*

The decision to grant or deny a preliminary injunction lies within the sound discretion of the district court. *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985). A preliminary injunction is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion.  *Harris Cty. v. CarMax Auto Superstores, Inc.*, 177 F.3d 306, 312 (5th Cir. 1999).  To obtain a preliminary injunction, the movant must establish the following:  (1) a substantial likelihood that the movant will ultimately prevail on the merits; (2) a substantial threat that the movant will suffer irreparable injury if the preliminary injunction is denied; (3) that the potential injury to the movant outweighs whatever damage the proposed injunction may cause the opposing party; and (4) that granting the preliminary injunction will not disserve the public interest.  *Guy Carpenter & Co. v. Provenzale*, 334 F.3d 459, 464 (5th Cir. 2003).

The requirements for issuance of a permanent injunction are the same except that a likelihood of success on the merits is not a required showing.  In order to receive a permanent injunction, a plaintiff must demonstrate: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S. Ct. 1837 (2006).  A party seeking a permanent injunction in a trademark infringement case must show (1) that the mark is protectable; (2) the party is a senior user; and (3) there is a likelihood of confusion between the two marks that (4) will actually result in irreparable injury for which there is no adequate legal remedy. *Union Nat'l Bank v. Union Nat'l Bank*, 909 F.2d 839, 844 (5th Cir. 1990).

> 2.    *Trademark Infringement and False Designation of Origin.*

To prevail on a claim of trademark infringement under the Lanham Act, plaintiff must show: (1) it possesses a valid mark; and (2) defendant's use of its trademarks creates a likelihood of confusion as to source, affiliation, or sponsorship.  *Elvis Presley Enter., Inc. v. Capece*, 141 F.3d 188, 193 (5th Cir. 1998).  However, it is important to remember that "mere reproduction of a trademark does not constitute trademark infringement if there is no likelihood of confusion." 4 J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 25:28 (4th ed. 2009).  And, "likelihood of confusion" is not *possible* confusion, it is *probable* confusion.  *Bd. of Supervisors for LSU A&M Coll. v. Smack Apparel Co.*, 550 F.3d 465, 478 (5th Cir. 2008).  In this respect, "[c]ontext is especially critical," and a court is required to "consider the marks in the context that a customer perceives them in the marketplace." *Scott Fetzer Co. v. House of Vacuums Inc.,* 381 F.3d 477, 485 (5th Cir. 2004).

A false designation of origin claims under 15 U.S.C. Section 1125(a) requires proof of five elements: (1) The defendant made a false or misleading statement of fact about its product or service; (2) the statement either deceived or had the capacity to deceive a substantial segment of potential consumers; (3) the deception was material, in that it was likely to influence consumers' purchasing decisions; (4) the product or service is in interstate commerce; and (5) the plaintiff has been or is likely to be injured as a result of the statement at issue. *Pizza Hut, Inc. v. Papa John's Int'l, Inc.*, 227 F.3d 489, 495 (5th Cir. 2000). "[A] false designation of origin case is very often one of 'passing off' or 'reverse passing off': a defendant markets and sells its product under the trade name or dress of a competitor (to capitalize on the goodwill and brand loyalty the competitor has built up) or markets and sells the competitor's products under defendant's trade name and dress." *Heartbrand Beef, Inc. v. Lobel's of New York, LLC*, No. V-08-62, 2009 WL 311087, at *2 (S.D. Tex. Feb. 5, 2009).

      *3.     Dilution.*

Dilution occurs when an activity diminishes a mark's ability "to clearly and unmistakably distinguish the source of a product." *Scott Fetzer Co.*, 381 F.3d at 489 (citing 15 U.S.C. § 1127; *Horseshoe Bay Resort Sales Co. v. Lake Lyndon B. Johnson Improvement Corp.*, 53 S.W.3d 799, 812 (Tex.App.—Austin 2001, pet. den.)). The elements of this claim are: (1) plaintiffs' ownership of a famous and distinctive mark; (2) use by the defendant of the mark; (3) association between the two marks due to similarity; and (4) the association between the two marks is likely to impair the distinctiveness of the mark or harm plaintiffs' reputation. *Nat'l Bus. Forms & Printing, Inc. v. Ford Motor Co.*, 671 F.3d 526 (5th Cir. 2012). Under Texas law, a plaintiff must show a distinctive mark and a likelihood of dilution. *E. & J. Gallo Winery v. Spider Webs Ltd.*, 286 F.3d 270, 278–279 (5th Cir. 2002).

4.       *Unfair Competition*

"As a general rule . . . the same facts which would support an action for trademark infringement would also support an action for unfair competition." *Boston Prof'l Hockey Assoc., Inc. v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir. 1975).

5.       *Misappropriation*

In order to prove a claim of unfair competition by misappropriation, plaintiff must establish that it created a product, that the product has been used by defendant who has a special competitive advantage in that defendant avoided the expense of creating the product, and that plaintiff has suffered commercial damage. *M–I LLC v. Stelly*, 733 F. Supp. 2d 759, 791 (S.D. Tex. 2010).

7.       *"Fair use" defense.*

The Lanham Act provides a statutory "fair use" defense whereby use of a registered mark by a non-registrant junior user is permissible and not a violation if the use is "otherwise than as a mark . . . of a term or device which is descriptive of and used fairly and in good faith only to describe the goods or services of such party, or their *geographic origin*[.]" 15 U.S.C. § 1115(b)(4) (emphasis added).   "The 'fair-use' defense, in essence, forbids a trademark registrant to appropriate a descriptive term for his exclusive use and so prevent others from accurately describing a characteristic of their goods." *Soweco, Inc. v. Shell Oil Co.*, 617 F.2d 1178, 1185 (5th Cir.1980), *cert. denied*, 450 U.S. 981, 101 S.Ct. 1516 (1981).   Here, defendant argues that it cannot be prevented from informing the public that its homes are available for sale at a place called "King Ranch Estates."   A leading commentator has opined that "even if one seller has achieved secondary meaning in a geographic term, anyone who is in fact located in that place has a right to tell purchasers of his location.   Such description of geographical origin must, however, be made in a purely descriptive and non-trademark sense."   McCarthy, <u>supra</u>, § 14:47.

9

The defense is also available with respect to federal and state unfair competition claims.  *See Soweco*, 617 F.2d at 1190.

Further, 15 U.S.C. § 1125(c)(3)(A) provides a defense of fair use "including a nominative or descriptive fair use, or facilitation of such fair use, of a famous mark by another person other than as a designation of source for the person's own goods or services" for claims of "dilution by blurring or dilution by tarnishment."  Thus, "once the owner of a famous mark establishes a prima facie case of dilution by blurring or tarnishment, it falls to the defendant to demonstrate that its use constituted a 'fair use . . . other than as a designation of source for the [defendant's] own goods or services,' 15 U.S.C. § 1125(c)(3)(A)."  *Rosetta Stone Ltd. v. Google, Inc.*, __ F.3d __, 2012 WL 1155143, at *19 (4th Cir. April 9, 2012).

In short, defendant is correct that fair use is a defense to all of the claims in this case for which injunctive relief has been requested.

### III. ANALYSIS

The first question to be answered is whether defendant is using "King Ranch" as a trademark so as to prevent defendant from asserting a fair use defense, because the defense "is available only when the allegedly infringing term is used *not as a trademark* . . . ."  *Soweco*, 617 F.2d at 1185.[4]  The Lanham Act defines the term "trademark" to include "any word, name, symbol, or device, or any combination thereof" that is used "in commerce . . . to identify and distinguish his or her goods, including a unique product, from those manufactured or sold by others and to indicate the source of the goods, even if that source is unknown."  15 U.S.C. § 1127.  In order to be protectable, a mark

---

[4]      It is important to note that plaintiffs do not argue that the use of the phrase "King Ranch Estates" infringes on their marks.  Plaintiffs complain only of the use of the words "King Ranch" in the absence of the additional word "Estates."

must be distinctive.  "In determining what can qualify as a trademark, it is crucial that the symbol in question be so distinctive that it is capable of performing the function of identifying and distinguishing the goods that bear the symbol."  1 McCarthy on Trademarks § 3:1, at 3–3.  Marks can be distinctive in two ways:

> First, a mark is inherently distinctive if its intrinsic nature serves to identify a particular source . . . .  Second, a mark has acquired distinctiveness, even if it is not inherently distinctive, if it has developed secondary meaning, which occurs when, in the minds of the public, the primary significance of a mark is to identify the source of the product rather than the product itself.

*Wal–Mart Stores, Inc. v. Samara Bros., Inc.*, 529 U.S. 205, 210–11, 120 S.Ct. 1339 (2000) (citations omitted).

A mark, then, both identifies and distinguishes the goods that are being offered.  Here, D.R Horton asserts that its use of the words "King Ranch" does not identify any aspect of the houses they sell—it merely identifies their location.  Defendant points out that the various internet advertisements plaintiffs complain of all identify D.R. Horton as the builder and source of the homes, and that the use of the term "King Ranch" relates to the location of those homes only.

There are two uses of the words "King Ranch" that plaintiffs specifically complain about and that plaintiffs believe constitute a trademark use of the words by defendant.  First, plaintiffs argue that a sign at the entrance to the housing deelopment is a trademark use of the words "King Ranch."  This is simply not supported by the record.  Defendant has presented unrebutted evidence that King Ranch Estates is referred to in the local community alternatively as King Ranch or King Ranch Estates because the area was referred to as King Ranch for generations before the housing development was built.  Further, the sign at the entrance to the community offers nothing as a product or service—it simply marks the physical entrance to a geographic location.  The sign

11

identifies a community by its name, it does not serve as a source identifier for any product or service so as to constitute a trademark usage.

Plaintiffs also assert that various uses of the words "King Ranch" in defendant's internet-based advertising are also trademark uses.  Plaintiffs point to the use of the stylized "King Ranch" sign on a web offering of homes for sale.  Plaintiffs' Exhibit 3.  The exhibit, however, clearly indicates that the homes are for sale by "D.R. Horton, America's Builder" and prominently references "drhortoncolorado.com" before listing "KING RANCH - ADVENTURE SERIES" homes, including "Alpine" and the "Evergreen," which are described by number of rooms, square footage, etc.  *Id*.  Another page shows pictures of two homes that are under large red lettering "Move-In Ready" and the King Ranch sign described above.  The addresses of homes are given, as well as their floor plans (one is "Harvard A," the other "Frontier B") and other features.  *Id*.

As used in the advertisement, "King Ranch" does not identify a source of the homes.  D.R. Horton is identified as the source of the homes in the advertisements.  Further, there is no dispute in this case that defendant is not offering homes anywhere other than King Ranch Estates in Colorado using "King Ranch" to describe them.  For example, defendant has not developed a "King Ranch" style or styles of home—it offers various styles of homes (e.g., Alpine, Evergreen, Harvard A, Frontier B) in a community called King Ranch Estates.  Thus, King Ranch is used as a location identifier only in all of the exhibits presented to the court, and the words do not themselves carry any meaning concerning the source of the homes.

The court finds instructive the analysis in  *Schafer Co. v. Innco Management Corp.*, 797 F. Supp. 477 (E.D. N.C. 1992), aff'd 995 F.2d 1064 (4th Cir. 1993).  In that case, the holder of a trademark for the "South of the Border" trademark sued a hotel for the content of its billboards.  The billboards associated the Family Inns hotel with the "South of Border Exit" and the "Border Exit."

The court found that the use of "Border Exit" was descriptive of the area where the hotel was located, an area on the North Carolina/South Carolina border. "The phrase 'Border Exit' accurately describes the location of the exit . . . which travelers must take to reach defendant's motel. It does not purport to serve as a symbol of defendant's establishment or services." *Id.* at 481. The court found that the term was used "in its old, primary, geographically descriptive sense and not in a trademark sense." *Id*. Likewise, the defendant's use of "South of Border Exit" (and noting the lack of the article "the" before the word "Border') did not constitute a trademark use because the physical highway exit had become known as the "South of the Border Exit," and, again, was not a trademark usage of the terms, but instead constituted a description of geographic location for purposes of applying the fair use defense. *Id*.

This case is much like *Schafer* in that the words which constitute the plaintiffs' trademark are not being used as a trademark by the defendant. "King Ranch" as used in all of the iterations of which plaintiffs complain has no other meaning than to indicate the location of the homes being sold by defendant. Again, defendant's advertisements do not offer a "King Ranch"-type home for sale. They offer a home built by D.R. Horton in King Ranch Estates, Colorado. Therefore, there is no trademark use of plaintiffs' mark by defendant in this case, and the fair use defense is available. The court must, accordingly, determine whether the fair use defense is otherwise proven in this case.

Fair use also requires that the information used be in good faith, which requires that the information be truthful. In *Saks & Co. v. Hill*, 843 F. Supp. 620 (S.D. Cal. 1993) the court found that a retail store named "Sacks Thrift Avenue" could not avail itself of a fair use defense because neither representation made in the name was true—Sacks was not the name of the owner, and it was not located on a street named Thrift Avenue. Thus, the defense of fair use could not be maintained. *Id*. Here, in contrast, there is no dispute that the specific area where the housing development is located

13

is named "King Ranch Estates" and that the area itself has been known as "King Ranch" for generations.

Where a geographical term is at issue, "the junior user must adapt and design his usage of the geographical term so as not to cause a likelihood of customer confusion." 1 McCarthy, *supra*, § 14:7. In making this determination, courts look to a variety of considerations which generally follow the "digits of confusion" used in analyzing the merits of an infringement claim. *E.g.*, *Mary Kay, Inc. v. Weber*, 601 F. Supp. 2d 839 (N.D. Tex. 2009) (using digits of confusion to determine likelihood of customer confusion in context of nominative fair use defense); *Schafer*, 797 F. Supp. at 481-482 (finding that defendant had limited its use of plaintiff's mark so as to avoid customer confusion).

In determining whether a likelihood of confusion exists, courts consider the following "digits of confusion": "(1) the type of mark allegedly infringed; (2) the similarity between the two marks; (3) the similarity of the products or services; (4) the identity of retail outlets and purchasers; (5) the identity of the advertising media used; (6) the defendant's intent; and (7) any evidence of actual confusion." *Mary Kay, Inc.*, 601 F. Supp. 2d at 857 (quoting *Scott Fetzer Co.*, 381 F.3d at 484-85). "Courts also consider (8) the degree of care exercised by potential purchasers." *Smack Apparel*, 550 F.3d at 478.

Some marks are more distinctive than others and can be "stronger" than others. The inquiry in this case is limited to the strength of the word mark "King Ranch," because plaintiffs have not alleged that defendant has used both the words and the "running W" symbol it has trademarked. Defendant has provided evidence that "King Ranch" is used to identify ranches in the states of Oregon, Montana, and Washington as well as plaintiffs' ranch in Texas. Gardiner Deposition Exhibits 46, 48, 49. Defendant has also presented uncontested evidence that the site of its current

14

residential development was known as the King Ranch in Colorado since the 1920s. Thus, the words "King Ranch" by themselves are not a particularly strong mark, and this factor weighs against a finding that there is a likelihood of confusion created by defendant's use of the words "King Ranch."

The word mark used by plaintiffs is, however, identical to the defendant's occasional use of the words "King Ranch" in isolation from the word "Estates." Of course, even plaintiffs concede that this similarity is cured when defendant refers to its housing development as "King Ranch Estates." Further, Mr. Gardiner confirmed that the "running W" symbol is part of plaintiffs' "brand" and is normally used along with the word mark "King Ranch," and is sometimes used without the word mark. Dkt. 9-4. Thus, the mark plaintiffs normally use for its products is not substantially similar to the defendant's use of the words "King Ranch Estates" nor to the defendant's use of the words "King Ranch." The court finds this factor is neutral concerning a likelihood of confusion.

There is no similarity between the products or services offered by plaintiffs and defendant. Plaintiffs do not build or sell homes, and defendant does not market merchandise in competition with plaintiffs' products. This factor weighs heavily against a finding of a likelihood of confusion.

Plaintiffs presented no evidence that any retail outlets sell their licensed products in Colorado. Further, and even if plaintiffs had presented such evidence, someone interested in purchasing a home in Colorado would not likely seek out plaintiffs, since plaintiffs do not sell homes. Someone interested in purchasing merchandise with the King Ranch Texas mark would not approach a homebuilder selling homes in Colorado to find such merchandise. And, of course, any purchaser who did either of the two things described above would quickly discern that the two entities are not related. This factor weighs against a finding of a likelihood of confusion.

The identity of advertising media is, in the court's view, neutral because although plaintiffs and defendant use internet-based advertising, they are in entirely different markets.

15

Plaintiffs certainly believe that defendant intends to benefit from an association with plaintiffs' mark.  However, the evidence presented to the court is that defendant had no involvement in the naming of King Ranch Estates, and that the area had been known as King Ranch in Colorado for decades prior to defendant becoming involved in the home development.  The occasional use by defendant of "King Ranch" without including the term "Estates," while more consistent with an intent to associate with plaintiffs' product than a uniform use of only "King Ranch Estates," is simply not probative of an intent to take advantage of plaintiffs' mark.  There is no evidence that anyone has been confused by defendant's identification of the housing plan, nor have plaintiffs made a convincing argument that association with their brand would be particularly beneficial in the limited market for defendant's houses—one community in Colorado.  This factor weighs against a finding that confusion is likely.

There is no evidence of actual confusion in this case.  Defendant has provided affidavit evidence than it has not received any calls, or other communications, from people believing that King Ranch Estates is affiliated with plaintiffs.  Plaintiffs have not presented evidence of actual confusion either.  Rather, plaintiffs' CFO testified that he believed there was a likelihood of confusion between defendant's homes and plaintiffs' trademarked items based upon "his experience." Dkt. 9-4 at 30.  He offered as an example a call placed by a woman from Oregon who was upset that someone driving a "King Ranch" Ford truck cut her off in traffic.  *Id.*  She thought the "running W" and "King Ranch" on the truck meant that the driver worked for King Ranch, Texas.  *Id.*  In fact, plaintiffs' marks are licensed to Ford which identifies a particular style of vehicle with that mark.  While the woman in question was certainly confused, her confusion is not relevant to this case.  Indeed, the woman who called *correctly* identified plaintiffs' mark, and traced it back to plaintiffs, not to some other entity known as "King Ranch."  There was no confusion, therefore, concerning

the *source* of the mark.  The confusion was with respect to the *meaning* of the mark as it is used by Ford as a licensee—it is used to connote a particular style of Ford vehicle, not to identify the owner of the particular vehicle.  This factor weighs against a finding that confusion is likely.

With respect to the care exercised by potential purchasers, the court has already noted that persons seeking to buy homes in King Ranch Estates, Colorado, are not likely to seek out the King Ranch located in Texas.  Persons who wish to purchase items licensed by plaintiffs and associated with King Ranch Texas likely will not approach a homebuilder in Colorado for such merchandise. Further, and because the existence of more than one ranch owned by a family named King is a near-certainty given that the family name is a common one, potential purchasers are not likely to believe that a community in Colorado named King Ranch Estates (even if it is sometimes referred to "King Ranch") has anything at all to do with a Texas ranch, or with the items it licenses and sells.  This digit also weighs against a finding of likely confusion.

The "digits of confusion" are not exhaustive, and no single factor is dispositive.  *Smack Apparel*, 550 F.3d at 478.  Here, the court's analysis yields six factors weighing against a finding that confusion is likely (one heavily so), and two factors that are neutral.  Therefore, there is no likelihood of confusion arising from defendant's use of plaintiffs' mark in this case.  In the context of defendant's fair use defense, defendant has adapted its "usage of the geographical term so as not to cause a likelihood of customer confusion." 1 McCarthy, *supra*, § 14:7.  Assuming for purposes of the motion for preliminary and permanent injunctive relief that plaintiffs can make out its infringement and related claims, plaintiffs cannot overcome defendant's assertion and proof of a fair use defense.

## IV. REMAINING MOTIONS

Plaintiffs have filed an "emergency" motion for a trial setting (Dkt. 14), which is premised upon plaintiffs' asserted entitlement to injunctive relief.  Since the court has just determined that injunctive relief is not warranted, the motion is DENIED AS MOOT.

Defendant D.R. Horton also filed a motion to dismiss based in part upon its assertion that Melody Homes is a necessary party.  Dkt. 8.  Plaintiffs have since amended their complaint and have named Melody Homes as a defendant.  Dkt. 13.  Thus, the motion to dismiss is DENIED AS MOOT in light of the amended complaint, but without prejudice to defendant's right to reassert its motion in response to the first amended complaint.

Finally, defendant moves to transfer this case to Colorado "[f]or the convenience of parties and witnesses, in the interest of justice."  28 U.S.C. § 1404(a).  Dkt. 12.  Whether a transfer is indicated is "a matter to be weighed and decided by the District Judge in his discretion upon a consideration of all the factors."  *Humble Oil & Refining Co. v. Bell Marine Svc.*, 321 F.2d 53, 57 (5th Cir. 1963).  No one factor is given dispositive weight.  *In Re: Volkswagen AG* (*Volkswagen I*), 371 F.3d 201, 203 (5th Cir. 2004).

The Supreme Court has given the court some guidance with regard to the factors it should consider, although no single factor is dispositive.  *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 241 n.6, 102 S. Ct. 252, 259 n.6 (1981).  The court must consider both private and public interest factors in making its determination.  *Volkswagen I*, 371 F.3d at 203.  The private interest factors consist of: 1) the relative ease of access to sources of proof; 2) the availability of compulsory process to secure the attendance of witnesses; 3) the cost of attendance for willing witnesses; 4) all other practical problems that make trial of a case easy, expeditious and inexpensive; and 5) the plaintiff's choice of forum.  *Id.*  The public interest factors consist of: 1) the administrative difficulties flowing from

18

court congestion; 2) the local interest in having localized interests decided at home; 3) the familiarity of the forum with the law that will govern the case; 4) the avoidance of unnecessary problems of conflict of laws; and 5) the unfairness of burdening citizens in an unrelated forum with jury duty. *Piper Aircraft*, 454 U.S. at 241; *Volkswagen I*, 371 F.3d at 203.

The plaintiffs chose the Southern District of Texas as the forum for this suit. Thus § 1404(a) requires that defendant show good cause in order to effect a transfer. *In re Volkswagen of America, Inc.* (*Volkswagen II*), 545 F.3d 304, 315 (2008) (citing *Humble Oil*, 321 F.2d at 56). "[T]o show good cause means that a moving party, in order to support its claim for a transfer, must satisfy the statutory requirements and clearly demonstrate that a transfer is '[f]or the convenience of parties and witnesses, in the interest of justice.'" *Id.* (quoting § 1404(a)). "Thus, when the transferee venue is not clearly more convenient than the venue chosen by the plaintiff, the plaintiff's choice should be respected." *Id.*

Plaintiffs' choice of this court as the forum for this case carries great weight. Although the physical site of the alleged infringing conduct is in Colorado, the court is not convinced that ease of access to relevant proof is a particularly compelling reason for transfer. All relevant discovery would appear to be easily obtained in either jurisdiction, making this factor neutral. Further, any information that may be needed from non-parties can be obtained by deposition. Finally, plaintiffs and defendant D. R. Horton are based in Texas, and while some employees of defendant Melody Homes may be based in Colorado, this does not impose such a hardship as to overturn plaintiffs' choice of forum. The motion to transfer (Dkt. 12) is DENIED.

19

### III. CONCLUSION

After a review of the motion for preliminary injunctive relief, the response, the evidence presented at the hearing, and the applicable law, the motion for preliminary injunctive relief, and request for permanent injunctive relief, are DENIED.  It is further ORDERED that plaintiffs' motion for a trial setting (Dkt. 14) and defendant's motion to dismiss (Dkt. 8) are DENIED AS MOOT.  It is further ORDERED that defendant's motion to transfer (Dkt. 12) is DENIED.

Signed at Houston, Texas on May 16, 2012.

_____
Gray H. Miller
United States District Judge